# EXHIBIT 11

**Settlement Agreement**

**between**

**The United States of America**

**and**

**Utah State University**

## Introduction

In January 2017, the United States Department of Justice, Civil Rights Division, Educational Opportunities Section, and the United States Attorney's Office for the District of Utah (collectively, the "Department" or "United States"), initiated a compliance review relating to whether Utah State University ("USU" or the "University"), a recipient of Department funding, failed to respond adequately to allegations of sexual harassment, including sexual assault, of students in its education programs and activities.  On October 2, 2019, the United States notified the University of areas in which the Department alleges the University failed to comply with Title IX of the Education Amendments of 1972 as amended, 20 U.S.C. §§ 1681–1688, and its implementing regulations, 28 C.F.R. pt. 54, which prohibit sex discrimination in education programs or activities receiving federal financial assistance (referred to herein collectively as "Title IX").

The Department and the University enter into this Agreement to address the University's obligations under Title IX to stop and prevent the recurrence of sexual harassment that creates a hostile learning environment, including sexual assault, and to provide clear, consistent, and equitable policies and grievance procedures that provide for prompt and equitable resolution of student and employee complaints alleging conduct that is prohibited by Title IX.

The Department acknowledges that prior to and during the time in which the Department's compliance review in this matter was pending, the University has proactively taken steps to strengthen its prevention of and response to sexual harassment and assault.[1]  Most significantly, the University has, among other proactive steps, created a dedicated Title IX Coordinator position supported by and reporting to the Executive Director of the Office of Equity (a new executive position); created and filled a Prevention Coordinator position dedicated to developing, evaluating, and implementing evidence-based prevention strategies; expanded investigative capacity and expertise in the Office of Equity, including adding an additional investigator; created a position dedicated primarily to providing supportive measures (including academic accommodations) to students who have experienced sexual harassment or assault; reviewed and enhanced training and prevention programs for students and employees, including the "Upstanding" initiative, designed to promote stakeholder-based interventions toward the prevention of discrimination and other problematic situations; developed a Title IX website and coordinating literature providing targeted educational resources and information; and began the process to fully revise the University's anti-discrimination policies and procedures to better comply with applicable laws and regulations.

Additionally, in 2016, the President of the University formed the University Sexual Violence Task Force, chaired by the President and responsible for setting an overarching strategic plan to address and prevent sexual violence in the University's campus community.  The Sexual Violence Task Force is comprised of a series of committees and working groups focused on various components of Title IX compliance and is staffed by leadership across the University's campus units who directly serve students, including the Office of Equity, Student Conduct

---

[1] The Department's acknowledgement does not connote agreement that USU's proactive measures, as implemented, meet the requirements of this Agreement or bring the University into compliance with Title IX.

Office, victim resource services, USU Police Department ("USU PD"), Athletics Department, Housing and Residence Life, and Student Involvement, among others.

These steps, together with the policies and procedures currently under revision, demonstrate the University's commitment to implement the Agreement described below, and demonstrate the University's willingness to embrace its responsibilities under Title IX and to ensure the promotion of a safe living, learning, and working environment within the University community.

### Terms of the Agreement

The University enters into this Agreement with the Department and commits to take the actions detailed below pursuant to Title IX.  This Agreement has been executed voluntarily by the Department and the University and does not constitute an admission by the University as to any finding reached by the Department.[2]

The University will make necessary and appropriate revisions to its policies, procedures, and practices regarding sexual harassment, including sexual assault; consistent with its policies, promptly and adequately investigate each instance of sexual harassment within its jurisdiction of which it has notice; and respond to sexual harassment that has created a hostile environment, including by taking prompt and effective steps reasonably calculated to end the sexual harassment, eliminate any hostile environment that may have arisen, prevent its recurrence, and, as appropriate, remedy its effects.[3]  In return, the Department will not initiate litigation against the University for non-compliance with Title IX identified as of the date of this Agreement, provided the University continues its efforts and implements the provisions of this Agreement in good faith and subject to the enforcement terms in Section IX below.

I.      **DEFINITIONS**

   A.   "Confidential Source" means a University employee designated by the University as authorized to receive disclosures of sexual harassment that the employee is required to keep confidential, such that the disclosure will not constitute notice to the University.

   B.   "Days" means calendar days, unless otherwise specified.  If a deadline falls on a weekend, a USU or federal holiday, or a date when USU is closed, that deadline will be extended to the first regular business day following.

---

[2] This Agreement does not constitute an admission by the University of any findings made by the Department.  This Agreement does not preclude the University's right to contest any basis of any finding of the Department in any current or future proceeding, including without limitation in any legal action, administrative review, audit, or other proceeding.

[3] Title IX and its implementing regulations protect students from prohibited discrimination and should not be interpreted to restrict the exercise of any expressive activities or speech protected under the U.S. Constitution. When a school works to prevent and redress discrimination, it must respect the free-speech rights of students, faculty, and other speakers.

C. "Document" or "documents" include all written, printed, and electronic communications.

D. "Disciplinary measures" include all disciplinary actions, including but not limited to suspension and expulsion.

E. "Informational materials" are materials (other than policies and procedures) that disseminate information about University sexual harassment policies and procedures and include, but are not limited to, websites, brochures, handouts, training materials, and other materials designed with the purpose of informing the public about relevant policies and procedures.

F. "Non-disciplinary measures" include interim or permanent: academic measures, such as academic accommodations and changes to class schedules; changes in residential assignment; and appropriate safety measures, such as no-contact directives or a safety escort.

G. "Reporting Employee" means a University employee who under USU policy and procedure must report any disclosure of sexual harassment to the Office of Equity.

H. "Residential campus" means campuses that provide the majority of courses during daytime hours and provide on-campus housing; specifically, the Logan, Price, and/or Blanding campuses.

I. "Risk assessment process" means the process set forth in Section II-3 of the current Code of Policies and Procedures for Students at the University, and any successor provisions of USU policy.

J. "Student" means an individual enrolled in one or more University courses.

K. "Sexual harassment" includes all forms of unwelcome conduct of a sexual nature that creates a hostile environment, as prohibited by Title IX, including sexual assault, and what is commonly referred to as "quid pro quo" and "hostile environment" sexual harassment.

## II.    TITLE IX COORDINATOR AND NOTICE OF NONDISCRIMINATION

A. The University has designated a Title IX Coordinator to coordinate its efforts to comply with and carry out its responsibilities under Title IX, including coordinating any investigation of a report of sexual harassment, as required by 28 C.F.R. § 54.135(a).[4]  During the course of this Agreement, the University agrees to continue this designation.  Although the University has appointed and may appoint other individuals to assist with compliance activities, the University must designate one Title IX Coordinator with ultimate oversight responsibility.  The University will

---

[4] Compliance with and expiration of this Agreement does not release the University from its ongoing requirements to comply with federal statutes and regulations.

provide the Title IX Coordinator with the resources and support necessary to fulfill this role effectively.

B.  The University will review and revise all documents subject to the requirements of 28 C.F.R. § 54.140 to ensure that they: 1) include the University's notice of nondiscrimination, including a statement that USU neither discriminates nor tolerates discrimination on the basis of sex in its educational programs and activities, and 2) clearly, consistently, and accurately identify the Title IX Coordinator's name or title, office address, email address, and telephone number.  At a minimum, these documents will include the University's website (www.usu.edu), all student and employee handbooks, all policies and procedures described in Section III of this Agreement, athletics handbooks, housing handbooks and manuals, course catalogs, and student and employee applications to the University.

C.  On or before 45 days from the date of the Agreement, the University will submit to the Department for review and approval its proposed notice of nondiscrimination and a list of the documents in which the notice will appear, approval of which the Department shall not unreasonably withhold.  If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations and this Agreement, the Department will do so within 60 days of receipt.  If the Parties disagree as to whether to incorporate the Department's comments and proposed revisions, the Parties will follow the dispute resolution procedures in Section IX below.

D.  Once the University incorporates its notice of nondiscrimination into documents under the terms above, the University will not substantively modify or remove the notice of nondiscrimination during the period of the Agreement without obtaining the Department's written approval, which the Department shall not unreasonably withhold.

III.    **POLICIES, PROCEDURES, AND INFORMATIONAL MATERIALS**

A.  To identify conduct that constitutes prohibited sexual harassment and students' options for reporting sexual harassment, including sexual assault, the University will review all relevant policies, procedures, and informational materials for clarity, consistency, and accuracy and will revise, rescind, or cross-reference them as necessary.  Specifically, the University will ensure its policies, procedures, and informational materials clearly, consistently, and accurately:

   1.  Define the types of sexual conduct prohibited by the University, including an explanation of when such conduct rises to a level that it creates a hostile environment, and explain what constitutes protected speech under the First Amendment;

   2.  Provide detailed information on disclosing sexual harassment to a Reporting Employee or reporting to the Office of Equity, including a description of how,

4

where, and to whom to report, in order to elicit a response from the University;

3. Provide detailed instructions for seeking services or support in connection with sexual harassment from a Confidential Source, including a description of who is a Confidential Source and how and where to connect with these services, and explain that such a disclosure will be held in confidence by the Confidential Source, to the extent permitted by law, and will not constitute notice to the University for purposes of Title IX;

4. Explain how to report sexual harassment to the Office of Equity anonymously or with a request for confidentiality, the consequences of each reporting option, and under what circumstances the University will override a request for confidentiality; and

5. Explain how to report to law enforcement to trigger a criminal justice response and explain the University's role, if any, when such a report is made.

B. The University will draft, disseminate, and implement grievance procedures providing for the prompt, equitable, and effective investigation, adjudication (where appropriate), and appeal (where applicable) of all reports of alleged sexual harassment and retaliation over which the University has jurisdiction, consistent with 28 C.F.R. § 54.135(b).  At a minimum, the University's grievance procedures will include:

1. An explanation of the types of reports that will be adjudicated using the grievance procedures, and those that will not be so adjudicated (e.g., anonymous reports);

2. An explanation of all steps the complainant is required to take to initiate the grievance procedures;

3. An explanation of how the University will use its risk assessment process when a report is made to the Office of Equity (directly or through a third-party report or the report of a Reporting Employee) and the individual making the report requests confidentiality or an otherwise limited response from the University;

4. A description of possible interim measures (e.g., temporary no-contact order, temporary class reassignment) the University may take while the process is pending;

5. An equal opportunity for each party to present witnesses and other evidence;

6. Specific timeframes for major stages of the process, and concurrent notification to both parties[5] if the University cannot meet these time frames;

7. An explanation of the actions the University may take if a party unduly delays or refuses to participate in the grievance process;

8. The standard of proof the University uses to make a finding;

9. A description of possible actions (e.g., discipline, no-contact order, academic accommodations, class or housing reassignment) the University may take after a finding of responsibility is made;

10. Concurrent notification to both parties of the outcome; and

11. An equal opportunity for both parties to appeal, if the grievance procedures include an appeal stage.

C. To ensure that the University addresses all reports of sexual harassment consistently, effectively, equitably, and promptly, the University will develop or revise written internal policies and procedures for USU employees for coordinating the University's receipt of and response to reports of sexual harassment. At a minimum, these written policies and procedures will:

1. Identify the Title IX Coordinator as the individual responsible for coordinating the University's efforts to comply with and carry out its responsibilities under Title IX;

2. Identify by job category and/or unit all Reporting Employees, and explain these employees' responsibilities upon receiving a disclosure of sexual harassment;

3. Require all Reporting Employees to forward each disclosure of sexual harassment to the Title IX Coordinator within two business days to ensure proper response and coordination;

4. Identify by job category and/or unit all Confidential Sources, and explain these employees' responsibilities upon receiving a report of sexual harassment, including keeping the report confidential, providing the complainant with information on how to report to the Office of Equity, and providing the University with non-confidential aggregated information indicating patterns of sex discrimination, such as multiple reports of sexual harassment in the same location;

---

[5] In situations where the respondent has yet to be notified of the complaint, it is permissible for the University to notify only the complainant. In situations where the complainant is unknown, and consistent with its policies and procedures, the University has chosen to move forward with its formal Grievance Procedures, it is permissible for the University to notify only the respondent.

5. Require all USU Confidential Sources to explain to the individual making a report of sexual harassment that the report does not constitute notice to the University and so will not guarantee any response by the University, and specify how to report to the University;

6. Identify by job category and/or unit all USU employees who have an assigned role in responding to reports of sexual harassment (other than the duty of a Reporting Employee to forward disclosures of sexual harassment to the Title IX Coordinator), and explain the relevant duties of each;

7. Describe the record-keeping requirements, including but not limited to complaint-related documentation and communication through the use of electronic software, that apply to USU employees involved in the receipt of and/or response to reports of sexual harassment;

8. Provide for the consistent use of the University's risk assessment process in instances where a complainant reports to the Office of Equity (directly or through a third-party report or the report of a Reporting Employee) and requests confidentiality and explain any other circumstances in which the University will use its risk assessment process;

9. Establish criteria for and a process by which the Title IX Coordinator and other University components will determine appropriate interim measures during the grievance investigation and adjudication process. These University components must include, at a minimum, the Office of Student Conduct, the Athletics Department, USU PD, Housing and Residence Life, the Student Involvement and Leadership Center, and the Colleges and Schools of the University;

10. Instruct Reporting Employees within University components to share all known information related to disclosures of sex discrimination with the Office of Equity. These instructions will, at a minimum, detail and create a process to implement each component's obligation to share all information related to pending sexual harassment disclosures, complaints, investigations, disciplinary measures, non-disciplinary measures, and findings of a violation of University policy. These University components will include but are not limited to the Office of Student Conduct, the Athletics Department, USU PD, Housing and Residence Life, the Student Involvement and Leadership Center, and the Colleges and Schools of the University;

11. Describe the scope of an appropriate investigation, including the types of evidence that must be obtained and reviewed; establish when and how the University will consider, as relevant evidence, additional reports of sexual harassment (including complaints of additional harassment, retaliation, or violations of no-contact orders) against a single respondent or occurring within a given program or activity;

7

12. Establish when and how the University will seek information about sexual harassment reports or incidents involving USU employees or students from: the Logan City Police Department, the Cache County Sheriff, all other relevant law enforcement agencies with jurisdiction over a geographical area encompassing a USU campus or location, and all other law enforcement agencies that receive such a report about which the University becomes aware;

13. Define parameters for processing a complaint using the grievance procedures when the misconduct at issue is the subject of concurrent criminal proceedings; and

14. Designate the stages of the process at which the Title IX Coordinator (or the Title IX Coordinator's designee) will communicate with the complainant and respondent to keep them timely informed about the investigation, adjudication, and appeals processes.

D. To ensure that the University consistently responds promptly and equitably to all allegations of sexual harassment of which it has notice, the University has established a system for storing electronically all reports of sexual harassment (including all written or verbal reports) in its electronic software system. The University must continue to maintain a system that stores the following information, in every case in which it is available:

1. The date and nature of the report;

2. The name of the reporter or that the report was anonymous;

3. The location of the incident;

4. The name of the person(s) who received the report;

5. The name of the person(s) alleged to have experienced sexual harassment, if different from the reporter;

6. The name(s) of the respondent(s);

7. The USU communities (e.g., athletics team, Greek organization, specific academic department) implicated, if any;

8. Whether the University opened an investigation or its reason for declining to investigate;

9. The name(s) of the person(s) assigned to investigate the complaint and take any interim measures;

8

          10. The interim measures taken, if any;

          11. The date of every major stage of the investigation, the final report, and each major stage of the appeals process; and

          12. The University's findings at the adjudication and appeal stages, including all permanent disciplinary and non-disciplinary measures taken.

E.   On or before 90 days from the date of the Agreement, the University will submit to the Department for review and approval all proposed drafts or revisions of its policies, procedures, and informational materials (including identification of which, if any, will be rescinded), approval of which the Department shall not unreasonably withhold.  If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations and this Agreement, the Department will do so within 60 days of receipt.  If the Parties disagree as to whether to incorporate the Department's comments and proposed revisions, the Parties will follow the dispute resolution procedures in Section IX below.

F.   Once the University revises its policies, procedures, and informational materials related to sexual harassment under the terms above, the University will not substantively modify those policies, procedures, or informational materials during the period of the Agreement without the written approval of the Department, which the Department shall not unreasonably withhold.

## IV.   NOTICE OF POLICIES AND PROCEDURES

A.   No later than 45 days after finalizing the revised or new policies and procedures required by Sections III.A. and B., the University will, at a minimum, publish notice of the revisions on the USU website, in the USU Statesman, and via email to all students and employees.  All subsequent substantive policy or procedural changes will be communicated on the USU website and via email.  The University will also publish the online location of all relevant policies and procedures in its student handbook.

B.   By the start of each academic year, the University will review and update the USU website (www.usu.edu) to ensure that it provides information consistent with all revised policies and procedures, and contains clear, consistent, and accurate information identifying which policies and procedures govern the investigation, adjudication, appeal, and sanctioning of sexual harassment reports.

C.   Within 30 days after providing notice to students and employees of the new or revised policies, the University will provide the Department with documentation sufficient to confirm that it has implemented Section IV.A. of this Agreement, including copies of all written notices issued to students and employees of the new policies and

procedures; a description of how the notices were distributed; and links to the webpages where the revised policies and procedures are located.

## V.    TRAINING

A.    General

    1.    For purposes of this Section, V, "students" means all students who are enrolled in a non-certificate degree-granting program for six credit hours or more per semester.

    2.    For purposes of this Section, V, "incoming students" includes new students (undergraduate and graduate), transfer students, and students returning from a leave of absence who have not previously completed the applicable required in-person training described in paragraph V.B.1.

    3.    Notwithstanding the other provisions of this Section, students who are enrolled solely in online courses or in courses delivered to the University's non-residential campuses will be required to take only the online training described in paragraph V.C.1.

B.    In-Person Training for Students

    1.    The University will develop (or contract for) an in-person interactive training on sexual harassment for all incoming students attending a residential campus, members of Greek organizations, leaders of recognized student organizations, and student athletes.  Such training will:

        a.    Include information regarding identification and prevention of sexual harassment, Title IX's application to sexual harassment, and the University's policies and procedures regarding the reporting, investigation, and adjudication of Title IX complaints.  At a minimum, the University will ensure that the training: (a) informs students of the University's prohibitions against sexual harassment and retaliation and the University's commitment to preventing and addressing sexual harassment; (b) educates students on what type of conduct constitutes sexual harassment under University policy; (c) informs students as to how and to whom they can report allegations of sexual harassment and retaliation; and (d) provides a general overview of Title IX, the rights it confers on students, the resources available to students who have experienced sexual harassment or retaliation, and federal agencies' role in enforcing Title IX and other laws prohibiting sex discrimination.

    b.   Use evidence-based curricula and methodologies that emphasize interaction with participants and use interactive scenarios that test and apply the learner's understanding of sexual harassment.

    c.   Emphasize: required consent in sexual interactions; the criminal, academic, housing, athletic, and student-record-related consequences for sexual harassment and/or retaliation; the role of alcohol and drug use in incidents of sexual harassment, including how such use impairs the ability to consent; clear examples of actions that may constitute sexual harassment under University policy and what may provide the basis for a complaint under the University's grievance procedures; how bystanders can help; and when off-campus misconduct falls within the University's jurisdiction.

2.   By 120 days from the date of the Agreement, the University will submit to the Department for review and approval a detailed description of the in-person interactive training for incoming students and for student groups, including: the specific information that will be covered; a copy of all written materials that will be used or distributed; the proposed dates of the trainings for Greek organizations, recognized student organizations, and student athletes; and a list of the job titles and categories of individuals administering the training and the required qualifications.  If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations and this Agreement, the Department will do so within 60 days of receipt.  If the Parties disagree as to whether to incorporate the Department's comments and proposed revisions, the Parties will follow the dispute resolution procedures in Section IX below.

3.   By Fall 2020 and for the duration of this Agreement, the University will ensure that all incoming students, members of Greek organizations, leaders of recognized student organizations, and student athletes receive in-person training.  For incoming students, the University will continue its practice of placing a registration hold on each student who has not completed the required incoming training by the next semester's registration deadline.  For members of Greek organizations, leaders of recognized student organizations, and student athletes, the University will withdraw eligibility for each student who has not taken the required in-person training by the applicable deadline.

4.   For the duration of this Agreement, the University will continue to provide in-person bystander training, including bystander intervention for incidents of sexual harassment, to students participating in the University's Connections program.  This bystander training may be combined or incorporated into the in-person training provided to incoming students attending residential campuses, as described in Section V.B.1.

5. Prior to the last training offered during the fall semester of each year covered by this Agreement, the University will issue notices to all incoming students, members of Greek organizations, and student athletes who have not yet taken the in-person interactive training, informing them that they are required to take such training prior to the end of the fall semester of that year.

6. The University will establish a plan and the necessary infrastructure to enable it to, on an ongoing basis, provide the in-person interactive training described in this Section and monitor whether students have received the trainings as required. By 120 days from the date of the Agreement, the University will submit this plan and a description of the infrastructure to the Department for review and approval. If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations and this Agreement, the Department will do so within 60 days of receipt. If the Parties disagree as to whether to incorporate the Department's comments and proposed revisions, the Parties will follow the dispute resolution procedures in Section IX below.

7. All training will include participant evaluations, which USU will analyze to determine the ongoing effectiveness of training.

8. The University will monitor training to ensure that every student required to participate in the trainings described in this Section does so as provided in this Section.

C. Online Training for Students

1. The University will develop (or contract for) an annual online training on sexual harassment for all current students and incoming students enrolled solely in courses delivered online or at a non-residential campus. The online training will:

    a. Include information regarding identification and prevention of sexual harassment, Title IX's application to sexual harassment, and the University's policies and procedures regarding the reporting, investigation, and adjudication of Title IX complaints. At a minimum, the University will ensure that the training: (a) informs students of the University's prohibitions against sexual harassment and retaliation and the University's commitment to preventing and addressing sexual harassment; (b) educates students on what type of conduct constitutes sexual harassment under University policy; (c) informs students as to how and to whom they can report allegations of sexual harassment and retaliation; and (d) provides a general overview of Title IX, the rights it confers on students, the resources available to students who have experienced sexual harassment or retaliation, and federal agencies'

12

role in enforcing Title IX and other laws prohibiting sex discrimination.

    b.  Be interactive and test the knowledge of the trainee.

    c.  Emphasize: required consent in sexual interactions; the criminal, academic, housing, athletic, and student-record-related consequences for sexual harassment and/or retaliation; the role of alcohol and drug use in incidents of sexual harassment, including how such use impairs the ability to consent; clear examples of actions that may constitute sexual harassment under University policy and what may provide the basis for a complaint under the University's grievance procedures; how bystanders can help; and when off-campus misconduct falls within the University's jurisdiction.

2. It is contemplated that the online training will differ for certain student populations (e.g., adult learners, international students) and will change from year to year to best serve the learning needs of the University's students.

3. By 90 days from the date of the Agreement, the University will submit to the Department for review and approval a copy of, or access to, the online training(s) for each year of this Agreement. If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations and this Agreement, the Department will do so within 60 days of receipt. If the Parties disagree as to whether to incorporate the Department's comments and proposed revisions, the Parties will follow the dispute resolution procedures in Section IX below.

4. By November 30 of each year**,** the University will ensure that all current students and all incoming students enrolled solely in courses delivered online or at a non-residential campus have completed the online training described in Section V.C.1. The University will use active efforts to encourage and incentivize all students required to complete the online training described in this Section. The University will continue its practice of placing a registration hold on each such student who has not completed the required online training by November 30.

5. The University will establish a plan and the necessary infrastructure to enable it to, on an ongoing basis, provide the online trainings described in this Section and monitor whether students have received the trainings as required. By 90 days from the date of the Agreement, the University will submit this plan and a description of the infrastructure to the Department for review and approval. If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations and this Agreement, the Department will do so within 60 days of receipt. If the Parties disagree as to whether to incorporate the

Department's comments and proposed revisions, the Parties will follow the dispute resolution procedures in Section IX below.

6. All training will include participant evaluations, which USU will analyze to determine the ongoing effectiveness of training.

D. Training for University Employees Designated as Reporting Employees

1. The University will develop (or contract for) in-person training for all University employees whom it designates as Reporting Employees, including but not limited to members of the USU PD. For non-USU PD employees located on non-residential campuses, in-person training may be conducted via interactive videoconferencing. This training will explain the University's responsibilities under Title IX to address reports of sexual harassment and how employees should respond. The training will include:

   a. Clear definitions and examples of conduct that may constitute sexual harassment and retaliation under the University's grievance procedures;

   b. Information identifying the University's Title IX Coordinator and describing the Title IX Coordinator's role, responsibilities, and contact information;

   c. Information identifying which employees (by job category and/or unit) are Reporting Employees;

   d. The reporting requirements of all such employees, including where and to whom reports of sexual harassment should be made, the potential consequences for failure to report, detailed information on how to report sexual harassment to the Title IX Coordinator using the University's electronic reporting system, including how to code sexual harassment cases so that they will be routed appropriately;

   e. Information that clearly, consistently, and accurately describes the University's policies and grievance procedures for Title IX complaints, including the parameters of each University component's role in the process;

   f. Information explaining how to notify complainants of the employee's obligation to refer the report to the Title IX Coordinator and the student's right to file a Title IX complaint with the school and a criminal complaint with campus and community law enforcement and how to do each; and

14

g.  Information specifying campus and community-based resources where victims of sexual harassment may seek help and assistance.

2.  By 120 days from the date of the Agreement, the University will submit to the Department for review and approval a detailed description of the in-person training, including the specific information that will be covered, a copy of all written materials that will be used or distributed during the training, and a list of the individuals administering the training and their qualifications.  If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations and this Agreement, the Department will do so within 60 days of receipt.  If the Parties disagree as to whether to incorporate the Department's comments and proposed revisions, the Parties will follow the dispute resolution procedures in Section IX below.

3.  Each Reporting Employee within the following categories will be required to complete the training annually by the first day of classes for each year of this Agreement or within 60 days of beginning employment with the University: Athletics, Residence Life, USU PD, Student Affairs, including Student Life, Global Engagement, Human Resources, administrators (e.g. department heads), and compliance and other investigative offices.

4.  All categories of Reporting Employees not delineated in Sections V.D.3. or V.F. will be required to complete the training annually by October 15 for each year of this Agreement or within 60 days of beginning employment with the University.

5.  The University will create and maintain a system for monitoring training to ensure that every such employee of the University participates in the training required by this Section.

6.  All training will include participant evaluations, which USU will analyze to determine the ongoing effectiveness of training.

E.  Training for University Employees Designated as Confidential Sources

1.  The University will develop (or contract for) in-person training for all University employees whom it designates as Confidential Sources, including but not limited to University employees who offer counseling and physical and mental health services.  The training will explain the obligations of Confidential Sources upon receipt of a report of sexual harassment.  This training will also explain the University's responsibilities under Title IX to address reports of sexual harassment made to Reporting Employees and how Reporting Employees are obligated to respond to reports of sexual harassment.  Specifically, the training will include:

a.  Clear examples of the types of conduct that constitute sexual
    harassment and retaliation, and that it may provide the basis for a sex
    discrimination complaint under the University's grievance procedures;

b.  Information identifying the University's Title IX Coordinator and
    describing the Title IX Coordinator's role, responsibilities, and contact
    information;

c.  Information clearly describing the University's policies and grievance
    procedures for Title IX complaints, including the parameters of each
    University component's role in the process;

d.  Information explaining how to notify complainants of the Confidential
    Source's obligation to keep confidential a report of sexual harassment
    and that no disciplinary action will be taken by USU in response to a
    report to a Confidential Source;

e.  Instructions for Confidential Sources on how to provide the University
    with non-confidential aggregated information, if applicable, indicating
    patterns of sex discrimination, such as multiple reports of sexual
    harassment in the same location;

f.  Information explaining how to notify complainants of their right to
    report sexual harassment to the Title IX Coordinator and to file a Title
    IX complaint with the school and a criminal complaint with campus
    and community law enforcement and how to do each;

g.  Information identifying which employees (by job category and/or unit)
    are Reporting Employees; and

h.  Information specifying community and campus-based resources where
    victims of sexual harassment may seek help and assistance.

2.  By 90 days from the date of the Agreement, the University will submit to the
    Department for review and approval a detailed description of the in-person
    training, including the specific information that will be covered, a copy of all
    written materials that will be used or distributed during the training, and a list
    of the individuals administering the training and their qualifications.  If the
    Department chooses to provide comments and proposed revisions to these
    materials to ensure consistency with applicable federal laws and regulations
    and this Agreement, the Department will do so within 60 days of receipt.  If
    the Parties disagree as to whether to incorporate the Department's comments
    and proposed revisions, the Parties will follow the dispute resolution
    procedures in Section IX below.

3. Each Confidential Source will be required to complete the in-person training annually, by the first day of classes for each year of this Agreement or within 30 days of beginning employment with the University. The University will maintain a system to monitor training to ensure that every such employee of the University participates in the training required by this Section.

4. All training will include participant evaluations, which USU will analyze to determine the ongoing effectiveness of the training.

F. Training for Individuals Involved in the Title IX Process

1. The University will develop (or contract for) an in-person training for the Title IX Coordinator and all individuals directly involved in processing, investigating, adjudicating, responding to appeals, and/or sanctioning misconduct pursuant to reports of sexual harassment. The University will not allow individuals to participate in the process until they have received the applicable training. The training(s) must be in-person and cover:

   a. The University's responsibilities under Title IX to address sexual harassment, including how to recognize and appropriately respond to sexual harassment;

   b. The University's policies and grievance procedures for Title IX complaints; and

   c. For the Title IX Coordinator and all individuals who investigate complaints of sexual harassment prohibited by Title IX, how and when to conduct and document prompt and equitable Title IX investigations. Training should include trauma-informed interviewing techniques; information as to how to identify, collect, and analyze evidence, including but not limited to witness statements, medical reports, and police reports; how to conduct a Title IX investigation during a concurrent criminal investigation; and information about consent and the role that drugs or alcohol may play in connection with the ability to consent.

2. All relevant individuals will receive this training annually, by September 30 of each year covered by the Agreement.

3. By 90 days from the date of the Agreement, the University will submit to the Department for review and approval a detailed description of the in-person training, including the specific information that will be covered, a copy of all written materials that will be used or distributed during the training, and a list of the individuals administering the training and their qualifications. If the Department chooses to provide comments and proposed revisions to these materials to ensure consistency with applicable federal laws and regulations

and this Agreement, the Department will do so within 60 days of receipt. If
the Parties disagree as to whether to incorporate the Department's comments
and proposed revisions, the Parties will follow the dispute resolution
procedures in Section IX below.

4. All training will include participant evaluations, which USU will analyze to
determine the ongoing effectiveness of training.

G. Training for USU PD

1. By 90 days from the date of the Agreement, the University will ensure that all
USU PD officers who respond to or investigate allegations of sexual
harassment, sexual assault, relationship violence, or stalking have received
training in evidence-based, trauma-informed investigative techniques.
Training will include how to identify drug- and alcohol-facilitated sexual
assault, how to identify relationship violence, effective report writing, and
evidence gathering. Training should also include information about how to
recognize and eliminate bias based on sex in policing.

2. By 90 days from the date of the Agreement, USU PD will establish a written
protocol for all USU PD officers who respond to or investigate allegations of
sexual assault to receive training at least annually regarding University
policies and procedures related to sexual harassment, University and
community resources available to support victims of sexual violence, and
current best practices for investigating sexual assault and relationship
violence.

3. All training will include participant evaluations, which USU will analyze to
determine the ongoing effectiveness of trainings.

## VI.    RELATIONSHIP WITH LOCAL LAW ENFORCEMENT

A. By 120 days from the date of the Agreement, the University will take reasonable
steps to finalize a written Memorandum of Understanding ("MOU") with each of the
following: the Logan City Police Department; the Cache County Sheriff; the Price
City Police Department; the Blanding Police Department; and all other relevant law
enforcement agencies with jurisdiction over a geographical area encompassing a USU
residential campus or location. Each memorandum will specify the way in which the
relevant entities will share information regarding sexual harassment reports in which
a University student or employee is a party and the respective role of each entity in
investigating and adjudicating such reports of sexual harassment.

B. Within 30 days of finalizing each MOU described in Section VI.A., the University
will provide a copy of the MOU to the Department. If substantive changes are made
to any MOU over the duration of this Agreement, the University will provide a copy
of the amended MOU to the Department within 30 days.

**VII.**    **EDUCATIONAL CLIMATE**

A. In each instance in which known sexual harassment creates a hostile environment, the
University will take disciplinary and/or non-disciplinary measures designed to
eliminate the hostile environment and restore access to educational programs or
activities.  Pursuant to Sections III.D. and VIII.C.1. of this Agreement, the University
will document all actions it takes to address the hostile environment, including the
nature and duration of any such actions.

B. The University will administer to all students a climate survey in the spring semesters
of the 2020-2021 and 2022-2023 academic years.

C. The University will continue to work with technical experts with research training to
consult on all aspects of the survey, including design, sampling, data collection
methods, data analysis, and report writing.  These technical experts may include
faculty researchers at the University, staff at a USU institutional research office, or
external technical experts.

D. The climate survey will:

1. Provide definitions of, or otherwise assess students' knowledge regarding
what constitutes prohibited sexual harassment and related retaliation;
2. Gather information regarding students' experience with sexual harassment and
retaliation while attending the University;
3. Determine whether students know when and how to report sexual harassment
and retaliation;
4. Gauge students' comfort level with reporting sexual harassment;
5. Gather information regarding potential barriers to reporting;
6. Assess students' familiarity with the University's outreach, education, and
prevention efforts; and
7. Solicit student input on how the University can encourage reporting of
prohibited sexual harassment and retaliation, and better respond to such
reports.

E. By 120 days from the date of the Agreement, the University will submit its proposed
climate survey and assessment methodology to the Department for review, and if
changes are proposed, shall resubmit for review before conducting.

**VIII.**    **REPORTING PROVISIONS**

A. The University will provide to the Department all documents and information
identified in Sections I through VII of this Agreement in accordance with the
timelines set forth above.  Specifically, USU will provide:

1. Notice of Nondiscrimination Pursuant to Section II

19

    a.   On or before March 28, 2020, the University will submit its proposed notice of nondiscrimination and a list of the documents in which the notice will appear.

2.   Policies, Procedures, and Informational Materials Pursuant to Section III

    a.   On or before May 12, 2020, the University will submit all proposed drafts or revisions of its policies, procedures, and informational materials (including identification of which, if any, will be rescinded).

3.   Notice of Policies and Procedures Pursuant to Section IV

    a.   Within 30 days after providing notice to students and employees of the new or revised policies, the University will provide the Department with documentation sufficient to confirm that it has implemented Section IV.A. of this Agreement.

4.   Training Pursuant to Section V

    a.   By June 11, 2020, the University will submit a detailed description of the in-person interactive training for incoming students and for student groups, including the information required by Section V.B.2.

    b.   By June 11, 2020, the University will submit its plan and a description of the necessary infrastructure to enable it to, on an ongoing basis, provide the in-person interactive training described in Section V.B. and monitor whether students have received the trainings as required.

    c.   By May 12, 2020, the University will submit a copy of, or access to, the online training(s), described in Section V.C., for each year of this Agreement.

    d.   By May 12, 2020, the University will submit its plan and a description of the necessary infrastructure to enable it to, on an ongoing basis, provide the online trainings described in Section V.C. and monitor whether students have received the trainings as required.

    e.   By June 11, 2020, the University will submit a detailed description of the in-person training for University employees designated as Reporting Employees, including the information required by Section V.D.2.

    f.   By May 12, 2020, the University will submit a detailed description of the in-person training for University employees designated as Confidential Sources, including the information required by Section V.E.2.

g. By May 12, 2020, the University will submit a detailed description of the in-person training for individuals involved in the Title IX process, including the information required by Section V.F.3.

5. Relationship with Local Law Enforcement Pursuant to Section VI

a. Within 30 days of finalizing each MOU described in Section VI.A., the University will provide a copy of the MOU to the Department.

6. Educational Climate Pursuant to Section VII

a. By June 11, 2020, the University will submit its proposed climate survey and assessment methodology.

B. If the University makes a material change to any document or information provided to the Department, the University will provide a specific notification of the change in its annual monitoring report, described in Section VIII.C., unless another provision in this Agreement requires the University to inform the Department sooner.

C. By January 31 and July 31 of each year covered by this Agreement, the University will submit a monitoring report to the Department for review. The January monitoring report will cover the preceding July through December; the July monitoring report will cover the preceding January through June. Each monitoring report will include:

1. An Excel spreadsheet documenting all reports of sexual harassment and the University's responses to such reports. For each report of sexual harassment, the spreadsheet will include the following information, where available to the Office of Equity:

a. the complainant's name, status at the time of the report (e.g., student, employee), and affiliations on campus (e.g., member of a specific athletics team, member of Greek organization), and all prior reports/incidents;

b. the respondent's name, status at the time of the report (e.g., student, employee), and affiliations on campus (e.g., member of a specific athletics team, member of Greek organization), and all involvement in prior incidents/reports;

c. the date of the initial report;

d. the date and location of the incident;

e. a description of the conduct;

f. the identity of the person to whom the report was made, by name and title;

g. the date that the report was referred to the Title IX Coordinator;

21

h. whether the University conducted an investigation and the dates the investigation began and concluded;
i. whether the University used its grievance procedures to adjudicate the grievance;
j. all findings made by the University and the date of such findings;
k. the date(s) on which the findings were communicated to the complainant and to the respondent;
l. all disciplinary measures taken and their duration;
m. all non-disciplinary measures taken and their duration;
n. the University's actions to remedy the effects of any sexual assault, stalking, domestic violence, dating violence, quid pro quo sexual harassment, sexual harassment creating a hostile environment, and retaliation;
o. the results of each appeal; and
p. the date on which the results of the appeal were communicated to the complainant and to the respondent.

2. An analysis of the data in the Excel spreadsheet that identifies patterns involving sexual harassment, including repeat offenders, reports involving specific student or employee populations (e.g., LGBTQIA+ students, first-year students, student-athletes, members of fraternities or sororities), particular locations (e.g., a specific dormitory or fraternity or sorority house), particular patterns of behavior (e.g., drug- or alcohol-facilitated assaults, use of violence, threat of violence, or weapons, staff/faculty-on-student harassment, minor-aged victims, and perpetration by individuals with a known criminal history. If such patterns exist, the analysis will include a description of the University's actions to address the pattern(s);

3. An analysis of all changes in the number or severity of reported incidents of sexual harassment, particularly among particular student or employee populations;

4. The date and duration of each student training that was required by this Agreement;

5. The number of students who did not participate in either the online or in-person training required by Section V of this Agreement during the reporting period, with an explanation for how the University will ensure that they receive the training;

6. The date and duration of each employee training that was required by this Agreement;

7. A list of each University employee, by name and job title, who missed any training required by Section V of this Agreement during the reporting period,

and an explanation for how the University will ensure that they receive the
training;

8. In applicable reporting periods, a report documenting the administration of the
   climate survey, including the cumulative results of each survey question,
   summaries of comments provided in the survey, and an analysis of student
   climate surveys results (see Section VII) consistent with the climate survey
   reports USU has issued for its two prior climate surveys;

9. A copy of all sexual harassment complaints against USU filed in court or with
   another federal or state agency;

10. All complaints, concerns, or recommendations relating to the University's
    Title IX obligations, policies, or procedures received from community
    members and stakeholders, including members of law enforcement; and

11. Any new programs or activities or changes to existing programs undertaken
    by USU to improve its sexual harassment response and prevention programs,
    and timelines for the implementation of these changes.

## IX.    ENFORCEMENT

A. If the Department chooses to provide feedback on any University policy, procedure,
   training, or other document subject to Department review and approval, the
   University will incorporate the Department's feedback unless it disagrees, in which
   case the University and the Department will negotiate in good faith to resolve the
   disagreement. If the parties are unable to agree on the revisions within 30 days of the
   Department's notice, and the Department determines that the disagreement constitutes
   non-compliance with the Agreement, the Department may pursue relief under the
   enforcement provisions of this Section.

B. The United States may enforce the terms of this Agreement, Title IX, the
   implementing regulations at 28 C.F.R. pt. 54, and all other applicable federal laws
   and regulations. In the event of an enforcement action brought by the United States,
   whether under the terms of this Agreement or otherwise, the University reserves all
   rights to challenge any purported legal, factual, or other basis of the enforcement
   action. If the United States determines during the course of monitoring the
   Agreement that the University is not in substantial compliance with any provision of
   this Agreement, Title IX, or the implementing regulations, the Department will
   provide the University notice of such substantial non-compliance along with the basis
   for the determination, and a specific description of the matters at issue. The
   University will have an opportunity to take action to correct or otherwise negotiate
   with the United States for the resolution of such substantial non-compliance within 45
   days of the notice.

C. In the event that the University does not correct substantial non-compliance following notice from the Department and a period of negotiations as set forth in Section IX.B., the United States may initiate judicial proceedings to enforce this Agreement, Title IX, or the implementing regulations. The United States agrees that it will not initiate or pursue litigation without first attempting to resolve the issues through negotiation as provided in this Agreement.

D. If the University, despite its good faith efforts, anticipates that it will be unable to meet any timeline set forth in this Agreement, it will immediately notify the Department of the delay and the reason for it. The Department may provide a reasonable extension of the agreed timeline.

E. For the duration of this Agreement, the University, including but not limited to the Office of Equity, the Student Conduct Office, and USU PD, will preserve and maintain all records and documents, including all electronically stored information, used to compile the above-referenced reports, and all other documents pertinent to its compliance with the Agreement, and will provide such information to the United States upon request. Such records and documents include, but are not limited to: written reports of sexual harassment; interview and investigation notes; any evidence submitted or collected; any records of correspondence with the parties, their representatives, and witnesses; records documenting disciplinary and non-disciplinary measures taken, including interim measures; relevant discipline records; records documenting the University's findings; records of any appeals; and any records related to training.

F. The Department retains the right to evaluate the University's compliance with this Agreement, including the right to conduct site visits, observe trainings, interview University staff and students, and request any relevant additional information, reports, or data, including the investigative reports and files of the Office of Equity and USU PD, as are necessary for the Department to determine whether the University has fulfilled the terms of this Agreement and is in compliance with federal law.

G. By signing this Agreement, the University agrees to provide data and other information in a timely manner in accordance with the reporting requirements of this Agreement. To ensure compliance with this Agreement, the Department may require additional monitoring reports or the ability to inspect data or other information maintained by the University as determined necessary by the Department.

**X.    TERMS AND TERMINATION**

A. This Agreement will be in effect through the 2022-2023 academic year and will not terminate until at least 60 days after the Department has received all reporting related to the 2022-2023 school year, as required by this Agreement, and all other information requested by the Department, as permitted by this Agreement.

B. This Agreement is binding upon the University, including its principals, administrators, representatives, successors in interest, and legal representatives.

C.  If any part of this Agreement is for any reason held to be invalid, unlawful, or otherwise unenforceable by a court of competent jurisdiction, such decision shall not affect the validity of any other part of the Agreement.  Further, the University and Department shall meet within 15 days of any such decision to negotiate in good faith whether the Agreement should be revised or supplemented in response to the court's decision.

D.  This Agreement is entered for the purpose of voluntarily resolving the issues identified by the Department's compliance review and is not, and will not be construed as, an admission of liability, fault, or wrongdoing of any kind by the University.

E.  This Agreement will not bar any individual from pursuing a complaint under Title IX against the University.

Signatures of the Parties to the Agreement:


Date: _2/12/2020_____

Noelle Cockett, President
Office of the President
Utah State University


Date: _2/12/2020_____

Shaheena Simons, Chief
Franz Marshall, Deputy Chief
Victoria M. Lill, Trial Attorney
Amanda K. Dallo, Trial Attorney
Brigid M. Benincasa, Trial Attorney
Educational Opportunities Section
Civil Rights Division
U.S. Department of Justice


Date: _2/12/2020_____

John W. Huber
Sandra Steinvoort
United States Attorney Office
District of Utah
U.S. Department of Justice

26