# EXHIBIT 29



**VIA EMAIL ONLY**

September 7, 2024

Shaheena Simons
Victoria Lill
U.S. Department of Justice
Educational Opportunities Section
Victoria.Lill@usdoj.gov

Amanda Berndt
United States Attorney's Office
District of Utah
Amanda.Berndt@usdoj.gov

Re:   _Response to Notice of Noncompliance related to USU Football Program_

Dear Ms. Simons, Ms. Berndt, and Ms. Lill:

Utah State University (the "University" or "USU") has reviewed the August 21, 2024 letter from the U.S. Department of Justice (the "Department" or the "DOJ"), which provided the University with notice of the Department's determination of substantial noncompliance with the requirements of the February 12, 2020 Resolution Agreement (the "Agreement") between Utah State University and the U.S. Department of Justice (the "Department" or the "DOJ") (referred to herein as the "Notice of Noncompliance"). I write today to provide USU's response to the Notice of Noncompliance, and to provide information regarding the actions that USU has and will be taking to ensure that the concerns raised in your August 21, 2024 letter are remedied.

While there is much to celebrate about the proud tradition of USU football and the talent and resilience of our student-athletes, USU acknowledges that culture and climate issues have persisted within this program since the execution of the Agreement. USU remains committed to proactively addressing these issues, and to ensuring that all USU programs and activities are respectful and welcoming spaces where sexual misconduct is not tolerated and individuals who report misconduct are supported.

USU's response to the Department's Notice of Noncompliance follows in the order and organization of the Notice of Noncompliance. Supporting documentation has been uploaded to the JEFS folder. A link will be provided separately. USU looks forward to continuing to work collaboratively with the Department to ensure that USU takes prompt, equitable, and effective steps to improve the climate towards sexual misconduct in the USU football program.

***Policy Violations by the Athletics Department Employees and Football Staff Members***
USU agrees with the Department's conclusions that former USU employees Blake Anderson, Jerry Bovee, Austin Albrecht, and Amy Crosbie violated USU Policy 340 by failing to report all information they received

about allegations of sexual misconduct by a now former USU football player—specifically an arrest for (1) domestic violence in front of a child and (2) assault. Further, USU agrees that Anderson's undisclosed and unauthorized investigation into the allegations of sexual misconduct by the former USU football player violated USU Policy 340 and that, at minimum, Bovee was aware of this investigation and failed to stop it. Additionally, USU agrees that both Bovee and Crosbie failed to report or otherwise disclose to the Title IX Coordinator their knowledge about Anderson's interview of the alleged victim and the written statement he collected from the alleged victim.[1]

USU also agrees that Anderson's and Bovee's "actions (and inaction) show a gross lack of professional judgment and a blatant disregard for USU's Title IX policies and procedures, on which they were trained annually." And, USU agrees with the Department's summary of the potential impacts of such actions, including interference with active police investigations and harm to victims of domestic violence. Further, USU agrees that Bovee and Crosbie failed to address Anderson's inappropriate investigation and that this was a failure of leadership.

These failures are deeply troubling to USU given the extensive effort USU has made to ensure all employees are trained on and understand their Reporting Employee obligations. USU has provided regular and consistent training on USU employees' Reporting Employee obligations.  As noted in the Notice of Noncompliance, USU's annual training emphasizes that Reporting Employees are not investigators and should not try to determine the truth and severity of reported incident before reporting it to the Title IX Coordinator. Both USU's training and its policies are patently clear that if an employee is unsure whether to report to the Title IX Coordinator, they should err on the side of reporting information.  Similarly, both USU Policy 340 and the associated training materials make clear that Reporting Employees should not investigate reports of sexual misconduct.[2] Anderson, Bovee, Albrecht, and Crosbie completed the Reporting Employee training annually.

USU's Office of Equity has also made concerted efforts to look beyond policy and collaborate with the Athletics Department to address concerns about the culture and climate within the football program. In March 2022, the two departments documented their shared commitment in a Memorandum of Understanding (MOU). The Office of Equity has met with Athletics leadership and in that context has discussed strategies for sexual misconduct prevention and climate improvement. The Office of Equity has also created targeted training to address climate concerns, including addressing misconceptions of issues of sexual misconduct. In addition, University leadership has sought to engage the Athletics Department to address climate issues proactively. For example, on January 23, 2023, leadership from the Office of General Counsel and University Communications met with Bovee and Crosbie to discuss "Leadership and Culture," and the Office of General Counsel met with Bovee and Crosbie on April 11, 2023 to discuss the "Climate in Football."  A similar meeting with Coach Anderson took place on April 25, 2023.  In October 2023, the University's senior leadership team discussed the keys to developing a sustainable system-based approach to

---

[1] The details of these policy violations are fully set forth in the Department's August 21 letter, the June 5 Husch Blackwell report, and the summary findings and conclusions created by Husch Blackwell for Anderson, Bovee, and Crosbie specific to their conduct. For that reason, USU does not recount them in any detail here.
[2] Since its enactment in January 2021, USU Policy 340 has provided that Reporting Employees who receive a disclosure sexual misconduct "should not investigate allegations of Sexual Misconduct." See USU Policy 340 (January 22, 2021), https://www.usu.edu/equity/files/pre-2023/pre-2023policies/interim-policy340.pdf.

U.S. Department of Justice
Education Division
September 7, 2024
Page 3 of 6

sexual misconduct, including improved culture and climate.[3]

Given USU Policy 340's central role in USU's Title IX compliance program, USU is committed to ensuring employees understand and comply with the policy. Accordingly, USU initiated the Husch Blackwell 340 Investigation on its own, based on irregularities in the information provided to the Office of Equity in connection with a now former USU football players. This action was not initiated based on a complaint or grievance. As a result of the independent investigation findings, USU terminated four employees for failing to comply with USU Policy 340. USU will continue to monitor and enforce reporting employee compliance.

Notwithstanding the clarity of the Office of Equity's trainings, on June 18, 2024, in response to the Husch Blackwell report, dated June 5, 2024, the Office of Equity provided a refresher training on USU Policy 340 to the Athletics Department. In addition, on August 21, 2024, the Executive Director for the Office of Equity and the Title IX Coordinator met with Athletics staff to discuss and answer any questions about reporting obligations. In addition to its Reporting Employee training handout, the Office of Equity has developed a Reporting Employee handout based on FAQs published on its website. Copies of these materials have been produced to the DOJ.

### *Office of Equity's Failure to Promptly and Effective Respond*

USU agrees with the Department's conclusion that the Office of Equity failed to respond promptly to information that Anderson had been in contact with the alleged victim of the spring 2023 incident.[4] USU further agrees that a prompt investigation of potential noncompliance with USU Policy 340 should include timely outreach to all individuals who may have information about a reported incident.[5] Notwithstanding, an investigator's responsibility to gather evidence and investigate potential non-compliance does not absolve a reporting employee from their obligation to report all information known to them and to update such disclosures. USU's reporting employee requirements are designed to ensure that the Office of Equity has all relevant information regarding a reported incident of sexual misconduct. This allows it to focus on providing supportive measures and connecting parties to resources, evaluating and addressing safety concerns, preventing ongoing misconduct, and facilitating a grievance process.

In July 2023, the Office of Equity investigators received direction and guidance that emphasized identifying and reviewing reporting employee compliance issues and conducting thorough investigations, including identifying and interviewing reporting parties and others who may have information about an incident. This expectation has been reinforced with changes to the safety assessment process that requires confirmation

---

[3] Regarding improved culture and climate, leadership discussed: (a) engagement from all levels and areas of campus in promoting a respectful and inclusive environment – "It's on Us"; (b) consistent and demonstrated commitment from university leadership (President, Deans, Vice Presidents, student leaders, etc.); (c) shared values and attitudes of respect, empathy, and intolerance of sexual misconduct; a conscious reduction of victim blaming, "good guy" defenses, and superstar bias; (d) diverse representation in leadership; (e) transparency (when possible) in actions taken to improve prevention and response, as well as respond to specific incidents.

[4] As noted in the Notice of Noncompliance, the Office of Equity did initiate and carry out an appropriate response to the allegations of domestic violence, including a prompt request for relevant university records and local law enforcement records. Once the Office was able to identify the victim through the receipt of the relevant police report, the office also made outreach to the claimant. A formal complaint was not filed in this matter; accordingly, a grievance investigation and adjudication was not initiated.

[5] As noted in the Notice of Noncompliance, the investigator did reach out to the Athletic Department's liaison to the Office of Equity, Amy Crosbie, to gather information.

that the investigator has contacted the reporting party. These updated forms were recently resubmitted to the DOJ for review. Finally, the Office of Equity will emphasize interpretations and applications of its policies and procedures with a focus on taking actions to stop, prevent, and remedy sexual misconduct and to promptly identify reporting employee noncompliance issues.

By engaging sooner, the Office of Equity will have greater and more timely knowledge of the underlying issues in any given case. This will place the Office of Equity in a better position to address noncompliance and prevent potential ongoing noncompliance and/or misconduct by implementing interim measures, such as administrative leave, where appropriate. See USU Procedures 340 (pages 6-10). As noted in prior communications to the Department, USU has been working with partners across campus, such as Human Resources, Student Affairs, Residence Life, and Student Life, to ensure that the Office of Equity is involved in early intervention actions such as imposing administrative leave, expectation-setting conferences, community messaging, etc. *See* April 29, 2024 correspondence. USU will ensure that such interim measures are considered and implemented, where appropriate, during the grievance investigation and adjudication processes governed by USU Policy 339 and 339A. USU will also ensure such measures are considered and implemented, where appropriate, during a pending USU Policy 340 investigation.

Additionally, USU clarifies its actions in response to a police report related to an incident that occurred prior to April 2023 but involved the same football player. This police report detailed *different* but very serious and disturbing allegations of sexual misconduct. After collecting this report in April 2023, the Office of Equity opened a separate case and attempted to investigate these allegations, starting by reaching out to the alleged victim. Concerning reporting employee compliance, this police report was provided to Husch Blackwell but was not a focus of the independent investigator's 340 investigation because there was no indication that any USU employee ever received information about this matter. As noted in the police report, the student-athlete was not notified of the victim's report to the police prior to the Office of Equity's collection of the report.[6] Instead, it appears that only the alleged victim and the local law enforcement agency were aware of this report.[7] Accordingly, there was not a basis to actively investigate a USU Policy 340 violation based on this police report. Notwithstanding, USU agrees with the Department's suggestion that the Office of Equity should carefully review all evidence and contact relevant parties, including coaches and other Athletics staff, to ensure it has all relevant information regarding a pattern of conduct and/or potential hostile environment.

### October 2023 Football Player Training

USU acknowledges that in October 2023, members of the USU football team engaged in inappropriate and disrespectful treatment of an Office of Equity Prevention Specialist and exhibited a dismissive attitude towards USU's annual sexual misconduct prevention training. USU agrees that this conduct was inappropriate and indicative of persisting culture and climate issues in the football program. Working with Athletic Director Sabau, the Office of Equity took actions to promptly and directly address the student-athletes' behaviors and believes these actions were reasonably calculated to stop and prevent the disrespectful behavior. Still, USU takes to heart the Notice of Noncompliance's repeated conclusion that the Office of Equity failed to engage directly with coaching staff, including setting expectations regarding expected leadership from USU coaching staff. Similarly, USU acknowledges the concern that while

---

[6] The student-athlete confirmed his lack of awareness when the Office of Equity disclosed this report to an institution to which the student-athlete sought to transfer.

[7] USU remains engaged in good faith efforts to address information sharing between local law enforcement and USU, including the execution of a Memorandum of Understanding.

expectations were set for the team, the disrespectful behavior was not addressed at the individual level.

Moving forward, Athletics and the Office of Equity will work together to ensure that issues within Athletics program are evaluated and addressed at both a community and individual level.  Additionally, the Athletic Director (or a designated administrator) and the relevant coaching staff will attend and supervise all formal or informal training or education (including with third-party departments or guest speakers) for topics related to sexual misconduct, consent, incapacitation, or reporting of sexual misconduct requirements. Additionally, the Office of Equity, in collaboration with Athletics leadership, will work directly with the coaching staff in all programs, including the USU football program, to coordinate training, receive input and feedback, and address concerns.[8]

***Corrective Action Taken and Planned by USU***
As noted in the Notice of Noncompliance and as outlined above, USU has already taken a number of steps in response to the findings of the Husch Blackwell report, including terminating four employees and issuing strong public statements regarding the importance of USU's Reporting Employee policy. USU, including President Cantwell and the USU Board of Trustees, are committed to building a culture of accountability and to ensuring all University programs and activities are free from discrimination and harassment.

In addition to the actions outlined above and those summarized in the Notice of Noncompliance, USU has taken and is committed to the following actions to ensure USU effectively responds to issues of sexual misconduct in the football program and USU Athletics more broadly. Many of these items are captured in an updated Memorandum of Understanding between the USU Office of Equity and the USU Department of Athletics, a copy of which is attached. USU's actions will include:

- **Updated Training Materials:** USU updated the presentation notes for its annual Reporting Employee training to emphasize USU Policy 340's prohibition on investigations. In response to the Notice of Noncompliance, the Office of Equity has created a slide specific to this topic.  A copy has been submitted to the Department for review and approval.
- **Internal Protocol to Guide the OOE's assessment of and response to Culture and Climate Issues:** USU is in the process of retaining outside counsel with deep experience in Title IX and Athletics to advise and assist USU with developing a protocol for assessing and responding to culture and climate issues in the USU football program. This protocol will be used by the Office of Equity as a template and toolbox to address culture and climate issues in other matters.
- **Directly and Promptly Communicating with Athletics Staff:** In June 2024, the Executive Director directed all Office of Equity investigators to engage directly with any and all Athletics Staff, including coaches, to coordinate responses to disclosures of sexual misconduct and to gather all relevant information. In a complimentary fashion, the Vice President and Director of Athletics will reinforce the university's expectations that all Athletics Staff continue to proactively engage with the Office of Equity.
- **Engaging Athletics leadership in the development and delivery of training and customizing and tailoring training for Athletics staff and student-athletes:** The Office of Equity and Athletics have agreed to create a cross-functional committee to review and improve student-athlete and Athletics staff training. This committee will focus on incorporating issues unique to athletics into the trainings. Additionally, this committee will collaborate to have effective messaging and engaging presentations for student-athletes and athletics staff. The Office of Equity and Athletics

---

[8] Previously, the Office of Equity had worked through Athletics leadership and a designated liaison.

will also work together to deliver and enforce required and supplementary training. As reported to the Department in April, the Office of Equity has worked with Athletics to identify potential gaps in training and recently expanded training to ensure that all Athletics volunteers receive USU's sexual misconduct training. See April 19, 2024 correspondence.

- **Ensuring that leaders of the football program send clear, consistent, and firm messaging:** The Athletics Department, in cooperation with the Office of Equity, will send clear, consistent, and firm messaging that sexual misconduct will not be tolerated, and any allegations of such misconduct will be reported promptly to and addressed appropriately by the Office of Equity. This messaging will be incorporated into norm-setting conversations with teams as well as delivered via messaging campaigns that utilize messaging systems, social media, and print mediums. The Office of Equity is also updating its Consistent Messaging training and will continue to provide this on an ongoing basis.

- **Establishing criteria and process for determining appropriate interim measures:** USU applies its policies and procedures for determining interim and supportive measures for parties during the grievance investigation and adjudication process equitably without consideration of a party's status. These procedures are found on pages 6-10 of USU's Procedures supporting USU Policy 340. Notwithstanding, to ensure athletics staff are included as the "appropriate administrator" under USU's procedures for interim measures and that there is effective collaboration on determining appropriate measures, the Office of Equity and Athletics Department have outlined their shared understanding of the process for determining interim and supportive measures for student-athletes in an updated Memorandum of Understanding. The Athletics Department, in consultation with the Office of Equity, is in the process of updating its Student-Athlete Handbook to provide a separate, and in some instances parallel, Athletics-based response to arrests for criminal conduct.

USU welcomes the Department's feedback on this response and the planned course of action for USU.

Sincerely,

Mica McKinney
Senior Vice President of Legal Affairs and General Counsel